Robert **BREEST**

v.

John **MORAN.**

Civ. A. No. 83–0330S.

United States District Court,
D. Rhode Island.

Sept. 9, 1983.

344

Robert Breest, pro se.

Anthony F. DelBonis, Sp. Asst. Atty. Gen., Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

SELYA, District Judge.

This is an application for a writ of habeas corpus in which the petitioner seeks release from incarceration at the Adult Correctional Institution, Cranston, Rhode Island ("ACI"). Petitioner was convicted of the crime of murder in the first degree in the New Hampshire Superior Court (Merrimack County) in March of 1973.

He was sentenced to 40 years to life, the sentence requiring that no less than the 40 years actually be served. The petitioner appealed to the New Hampshire Supreme Court which found no reason to overturn either his conviction or the resultant sentence. *State v. Breest,* 116 N.H. 734, 367 A.2d 1320 (1976).

Petitioner began serving his term of imprisonment at the New Hampshire State Prison ("NHSP"). He wasted little time in turning to the federal court system, where he unleashed volley after volley by way of filing *seriatim* habeas petitions challenging, on various grounds, the constitutionality of his conviction and sentence. None of these barrages struck the mark.[1]

---

1. *E.g., Breest v. Helgemoe,* 579 F.2d 95 (1st Cir.), *cert. denied,* 439 U.S. 933, 99 S.Ct. 327, 58 L.Ed.2d 329 (1978) (challenging the sentence and the admission of certain evidence which was assertedly obtained in violation of the Fourth Amendment); *Breest v. Perrin,* 479 F.Supp. 495 (D.N.H.1979), *aff'd,* 624 F.2d 1112 (1st Cir.), *cert. denied,* 449 U.S. 1020, 101 S.Ct. 585, 66 L.Ed.2d 481 (1980) (attacking the use of testimony from a witness who, while testifying, allegedly perjured himself); *Breest v. Perrin,* 495 F.Supp. 287 (D.N.H.1980), *aff'd,* 655 F.2d 1 (1st Cir.), *cert. denied,* 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 597 (1981) (seeking retroactive application of the First Circuit's invalidation of a stock New Hampshire reasonable doubt instruction).

On August 13, 1981, pursuant to the authority vested in the warden of the NHSP and in accord with the New England Interstate Corrections Compact (the "Agreement"), the petitioner was transferred involuntarily to the A.C.I. This change in placement opened new vistas for the litigious Mr. Breest. He filed for post-conviction relief in the Rhode Island state courts, e.g., *Breest v. Moran,* 445 A.2d 880 (R.I. 1982). He likewise invoked the processes of this court in a petition for habeas corpus filed here in 1982; that sally was dismissed without prejudice by this court for failure to exhaust state remedies. *Breest v. Moran,* No. 82–600–S, slip op. at 3 (D.R.I., Nov. 15, 1982). The Rhode Island Supreme Court lately denied relief to Breest, characterizing his contentions as "totally frivolous." *Breest v. Moran,* 457 A.2d 271, 272 (R.I.1983). Plaintiff, having seemingly exhausted his state remedies, now seeks relief anew from this court pursuant to 28 U.S.C. § 2254. The defendant is the director of the Department of Corrections for the State of Rhode Island.

The petitioner today does not challenge either his conviction or his sentence: instead, he contests the conditions of his confinement. Specifically, petitioner asserts that New Hampshire law requires that his sentence be served in the NHSP, and that his transfer to the ACI unconstitutionally violated his right to remain in more northerly climes. To buttress this claim, the petitioner argues that the Agreement is itself unconstitutional; and thus, that the transfer, which was executed under the Agreement's authority, was and is invalid. Breest, never at a loss for polemics, simultaneously urges that this court must order his release. He orchestrates that claim by the following syllogism: New Hampshire, by surrendering (i.e., transferring) him without authority, lost jurisdiction over his person; Rhode Island, because of the lawless nature of the transfer, acquired no jurisdiction and has no right, power or warrant to keep him

since he has not violated any law of Rhode Island; ergo, he should be set at liberty.

While the petitioner is correct in stating that any agreement between two or more states which tends to increase the political power of the states and to encroach upon the supremacy of the United States needs congressional approval pursuant to the Compact Clause, U.S. Const. Art. I, § 10, cl. 3, *New Hampshire v. Maine,* 426 U.S. 363, 369–70, 96 S.Ct. 2113, 2117, 48 L.Ed.2d 701 (1976); *Virginia v. Tennessee,* 148 U.S. 503, 519, 13 S.Ct. 728, 732, 37 L.Ed. 537 (1893), not every agreement between the states (howsoever entitled) is a "compact" *within the meaning and intendment of the Compact Clause. See, e.g., Cuyler v. Adams,* 449 U.S. 433, 440, 101 S.Ct. 703, 707, 66 L.Ed.2d 641 (1981); *United States Steel Corp. v. Multistate Tax Commission,* 434 U.S. 452, 468, 98 S.Ct. 799, 810, 54 L.Ed.2d 682 (1978). Here, Breest asseverates that the Agreement implicates the Constitution because it augments the political might of the states *quoad* the federal government. Yet, petitioner's only example of this putative increase in power is that the existence of the Agreement may abridge the right of a prisoner to exercise habeas corpus. The argument stands naked and unadorned, however, as the petitioner never explains how, why or in what fashion the Agreement curtails his freedom to seek habeas relief.[2] In any event, access to habeas corpus relief is a right individual to the petitioner, in no way affecting the political status of the states vis-a-vis the federal government. *See Tavarez v. United States Attorney General,* 668 F.2d 805, 810–11 (5th Cir.1981); *Roy v. Hall,* 521 F.2d 120, 124 (1st Cir.1975). And, an objective review of the terms, provisions and implications of the Agreement fails to reveal any conceivable way in which it impacts the political power of states. It follows inexorably that the Agreement does not require congressional approval, nor does it transgress the Compact Clause of the Constitution.

---

**2.** The proof of this particular pudding, while doubtless unappetizing to the plaintiff, is that the interstate shift in place of confinement has

not perceptibly slowed the flow of Breest's habeas filings.

■ The remainder of Breest's argument appears equally shallow. He contends that, as a condition of his sentence, New Hampshire law requires that he serve his time in a New Hampshire prison. But New Hampshire law runs unerringly to the contrary. In *State v. Peabody,* 121 N.H. 1075, 438 A.2d 305 (1981), the New Hampshire Supreme Court held that a judge must send to the NHSP an individual who is to be incarcerated for more than one year. *Id.* 438 A.2d at 308. The court went on to note, however, that the terms, conditions, and place of incarceration become, after the imposition of a sentence mandating confinement at the NHSP, a matter of discretion for the warden. *Id.; see* N.H.Rev.Stat. Ann. § 651:25. Thus, under New Hampshire law, a prisoner has no continuing right to remain incarcerated at a specific jail.

■ This conclusion is buttressed by the New Hampshire Supreme Court's holding in *Goodnow v. Perrin,* 120 N.H. 669, 421 A.2d 1008 (1980). There, a prisoner was transferred from the NHSP to the federal prison system. In challenging the transfer, the prisoner claimed that the move exceeded the warden's authority since no statute authorized intermural state-federal transfers. The court rejected that contention. The court held that the Agreement gives the warden broad discretion anent interstate prison transfers, *id.* 421 A.2d at 1010, and that under the law of the state, a convict has no right to serve his time in any particular facility (or even within the state). *Id. Accord Laaman v. Perrin,* 435 F.Supp. 319, 321 (D.N.H.1977). Finally, the court concluded that a prisoner has no liberty interest, under New Hampshire law, in serving his time at the NHSP. *Id.* Nor is the right to serve a sentence in a particular correctional facility protected by the United States Constitution. Absent a state-created right to the contrary, the transfer of a prisoner from one place of incarceration to another does not violate the Due Process Clause of the Fourteenth Amendment. *Montanye v. Haymes,* 427 U.S. 236, 242–43, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976); *Meachum v. Fano,* 427 U.S. 215, 224–25, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976); *McDonald v. Hall,* 610 F.2d 16, 18 (1st Cir. 1979). Since Breest has no right to be confined at the NHSP under state law, it must follow that he has no protectible liberty interest under the United States Constitution.

The petitioner's final argument assumes that the Agreement is invalid and that his transfer violates New Hampshire law. Since this court has found that neither of those assumptions is correct, it need not entertain petitioner's contention that New Hampshire, by transferring him, has forfeited custody over his person.[3]

There is a stiff price to be paid for the constitutional protections which are endemic to our democracy, and misarchists such as Breest exact that price to the fullest. Having been fairly tried and convicted of a heinous crime, and having received a sentence commensurate with his malefaction, he has whiled away the time by concocting a parade of horribles, dressing his creations in the garb of successive applications for post-conviction relief, and loosing them upon a variety of courts. The cumulative effect of this tomfoolery has been to clog further already-overburdened federal and state courts and profligately to waste both judicial resources and tax dollars. Yet, while one may deplore the Alice-in-Wonderland quality of a system which is open to such abuse, one must continually hark back to the precious liberties which would, in meritorious cases, be at risk were even the Breests of this world denied their day in court.

Since petitioner has not shown that he is in custody in violation of any right guaranteed him by the United States Constitution,

---

**3.** In any event, the courts that have considered the issue have held that a sovereign does not surrender legal custody over a prisoner by transferring him to another sovereign for service of a sentence. *Tavarez v. United States* *Attorney General,* 668 F.2d at 809; *Hernandez v. United States,* 527 F.Supp. 83, 85 (W.D.Okl. 1981); *see, e.g., United States ex rel. Ellis v. Illinois,* 395 F.2d 689, 690 (7th Cir.1968).

his petition for habeas relief is hereby denied and dismissed.

*So ordered.*